IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

LARRY DONNELL MILNER                                                    PLAINTIFF


v.                                    Civil No.  4:16-cv-4099


PRESTON GLENN and SHERIFF
DANNY MARTIN                                                          DEFENDANTS

## MEMORANDUM OPINION

Before the Court is Defendants' Motion for Summary Judgment.  (ECF No. 18).  Plaintiff

Larry Donnell Milner has not responded to the motion, and his time to do so has passed.[1]  The

Court finds the matter ripe for consideration.

## I.       BACKGROUND

On October 17, 2016, Plaintiff filed his Complaint pursuant to 42 U.S.C. § 1983.  (ECF

No. 1).  He proceeds *pro se* and *in forma pauperis*.  Plaintiff alleges that his rights were violated

by the denial or delay of medical care while incarcerated in the Nevada County Jail.  (ECF No. 1

at 3-4).  Specifically, he alleges he was arrested at his home for a probation violation on October

6, 2017.  On October 9, 2016, he experienced symptoms which were thought to be indicative of

a stroke on his left side.  Plaintiff alleges an ambulance was called, but when it arrived, Defendant

Jail Administrator Glenn asked if he could be transported by the jail van instead.  A driver,

presumably the ambulance driver, refused to allow him to be transported by van because the time

for transport was a concern for a stroke victim.  (ECF No. 1 at 4).

---

[1] The Court ordered Plaintiff to respond to the instant motion by October 2, 2017.  (ECF No. 22).  As of the date
of this Memorandum Opinion, he has not filed a response.

Plaintiff alleges that he was transported by ambulance to St. Michael's Hospital in Texarkana. He received MRI and CAT scans at the hospital. He informed the hospital that he had health insurance with no copays, because he was disabled. He alleges the doctors could not "figure out why it had happened," so they did an MRI of his stomach and found a large spot on his liver. Plaintiff alleges he was scheduled for a liver biopsy on October 12, 2016, but Defendant Glenn forced his discharge from the hospital on October 11, 2016, before the biopsy could be done and "in the middle of [his] treatment." (ECF No. 1 at 4). Plaintiff alleges this showed indifference to his health. (ECF No. 1 at 4). Plaintiff's Complaint was signed and dated on October 12, 2016. (ECF No. 1 at 5).

Plaintiff proceeds against Defendants in both their official and personal capacities. (ECF No. 1 at 2). He asks this Court to release him back to his doctors until "such time that my doctors inform this Court that all my health problems have been satisfactorily handled with a prom[pt]ness that it deserved." (ECF No. 1 at 5).

Defendants submitted medical and jail records with their Summary Judgment Motion. As noted by Defendants in their Motion, these records indicate Plaintiff was taken to the emergency room of Christus St. Michael Health System on October 9, 2016. (ECF No. 19-2 at 1). He received MRI and CAT scans. There was no evidence of a stroke. However, there was MRI evidence indicating liver cancer in the form of a 6.6 cm hepatic mass. A liver biopsy was discussed, but "Mr. Preston Glenn[,] who was a supervisor at the prison . . . made it clear that the prison was not willing to undertake that workup at this point and thus the patient was discharged back to prison." (ECF No. 19-4 at 1-2). Further notes indicated that the prison called and indicated the "patient should be sent back to the prison and he will eventually pursue an outpatient

workup for his hepatic mass." (ECF No. 19-4 at 2). Jail records indicate Plaintiff was discharged on an OR bond on October 28, 2016. (ECF No. 19-1).

In his affidavit, Defendant Glenn stated he called the hospital and was told Plaintiff had not suffered a stroke. He was told about the spot on Plaintiff's liver and that he asked if the spot "was an emergency at this time and was informed that it was not." He stated further that "St. Michael released Mr. Milner back to the jail on October 11, 2016, knowing that Mr. Milner could seek further treatment on an outpatient basis." (ECF No. 19-6).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.    DISCUSSION

Plaintiff does not allege a denial or delay of medical care for his stroke symptoms. Rather, he alleges that Defendant Glenn forced his discharge from the hospital before Plaintiff's liver mass could be biopsied.

Defendants argue that their Motion for Summary Judgment should be granted because: (1) Plaintiff's Complaint is "completely devoid" of any alleged policy or custom of Nevada County which resulted in a violation of his constitutional rights; (2) there is no evidence that Defendants were deliberately indifferent to Plaintiff's medical needs, and Plaintiff failed to provide any medical documentation to show his health was damaged as a result of his return to jail prior to the liver biopsy; (3) Plaintiff's claim against Defendant Marton is based on the theory of *respondeat superior*; and (4) Defendants are entitled to qualified immunity. The Court will now address each of Plaintiff's claims.

### A.  Official Capacity

Plaintiff asserts denial-of-medical-care claims against Defendants Glenn and Martin in their official capacities. Under section 1983, a defendant may be sued in either his individual capacity, in his official capacity, or in both. In *Gorman v. Bartch*, the Eighth Circuit Court of Appeals discussed the distinction between individual and official capacity suits, stating:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.

152 F.3d 907, 914 (8th Cir. 1998) (internal citations omitted). "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights. *Bd. of Cnty. Comm'rs, Okla. v. Brown,* 520 U.S. 397, 405 (1997).

Here, Plaintiff has failed to allege that any policy or custom of Nevada County caused his discharge from the hospital. Instead, he alleges that Defendant Glenn forced his discharge. Thus, there is no genuine dispute as to any material fact concerning Plaintiff's official capacity claims, and Defendants are entitled to judgment as a matter of law on these claims

### B. Personal Capacity

Plaintiff also asserts denial-of-medical-care claims against Defendants Glenn and Martin in their personal capacities. The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need, Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious

that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs*, 512 F.3d 488, 499 (8th Cir. 2008) (internal citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." Estelle, 429 U.S. at 104-05 (footnote omitted). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis." *Holden v. Hirner*, 663

F.3d 336, 342 (8th Cir. 2011) (internal quotations omitted). Unless, however, the need for medical attention is obvious to a layperson, in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub,* 638 F.3d at 919 (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *cf. Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

Plaintiff alleges he was removed from the hospital before his liver biopsy was done, characterizing this removal as being "in the middle of his treatment." He does not, however, allege that he was in any pain or suffering any other acute or escalating symptoms from the mass in his liver. Nor does he provide any allegations or medical documentation to support an inference that he suffered any detrimental effect to his condition or prognosis as a result of being returned to jail prior to the liver biopsy. A review of the records indicate he was discharged from the hospital and returned to the Nevada County Jail on October 11, 2016. He was released from the jail on October 28, 2016. Plaintiff alleges that he had medical insurance without a copay to pursue treatment. Nothing in the record suggests that the delay, alone, between the identification of the liver mass and Plaintiff's release from jail seventeen days later, at which point he was able to seek treatment, had a detrimental effect on his condition or prognosis.

Thus, there is no genuine dispute as to any material fact concerning Plaintiff's personal capacity claims, and Defendants are entitled to judgment as a matter of law on these claims. In light of this, it is not necessary for the Court to address Defendants' arguments concerning *respondeat superior* or qualified immunity.

## IV.    CONCLUSION

For the reasons discussed above, the Court finds that Defendants' Motion for Summary Judgment (ECF No. 18) should be and hereby is **GRANTED**.  Plaintiff's case is hereby **DISMISSED WITH PREJUDICE**.  Judgment will be entered accordingly.

**IT IS SO ORDERED**, on this 20th day of October, 2017.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge